UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GERARD SCHULTZ,

                Plaintiff,

  -against-

TRIBUNE COMPANY, INC., NEWSDAY INC.,
ROBERT BRENNAN, ROBERT GARCIA,
RAYMOND JANSEN, LOUIS SITO, TIMOTHY
P. KNIGHT, and "JOHN DOES and JANE DOES,"

                Defendants.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 06-CV-4800 (FB) (RER)

*Appearances:*

*For Plaintiff Gerard Schultz:*
JOSEPH O. GIAIMO, ESQ.
JADE L. FULLER, ESQ.
Giaimo Associates, LLP
80-02 Kew Gardens Road
Kew Gardens, New York 11415

*For Defendants Newsday Inc. and Timothy P. Knight*:
CLIFF FONSTEIN, ESQ.
ERIC G. HOFFMAN, ESQ.
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019

**BLOCK, Senior District Judge:**

        Plaintiff Gerard Schultz ("Schultz") was fired in 2004 by the New York area daily newspaper Newsday. Schultz believes that his termination was in retaliation for his role as a "whistleblower" on a scheme whereby the newspaper reported inflated circulation figures in order to charge higher rates to advertisers ("the circulation scandal"). Defendant Newsday and its publisher, Timothy P. Knight (collectively, "Newsday"), now move for summary judgment on all of Schultz's claims.

        Schultz's complaint is not a model of clarity. The complaint makes repeated references to Schultz's status as a "whistleblower," *see, e.g.*, Am. Compl. at ¶¶ 184, 189, 194, 198, but critically fails to allege a discrete "whistleblowing" claim under either federal or state law.[1]

---

[1] The Whistle Blower Protection Act ("WPA"), 5 U.S.C. § 2302, protects federal employees from retaliation for reporting unlawful activity. Schultz sought to add a claim under the WPA in 2009,

Instead, Schultz's complaint alleges claims under: (1) the Family Medical Leave Act ("FMLA"); (2) the Americans with Disabilities Act ("ADA"); (3) the Employee Retirement Income Security Act ("ERISA"); and (4) the New York State Human Rights Law ("NYSHRL").[2] *See* Am. Compl., Docket Entry No. 2-3 (Jan. 2, 2007).

Schultz must connect his termination to his rights under the aforementioned statutes in order to survive summary judgment. This he fails to do, since he consistently and ardently maintains that his termination was in retaliation for his role as a "whistleblower," and not on account of his taking medical leave (FMLA), his disability (ADA), or his entitlement to disability benefits

---

after discovery was completed, despite the fact that the WPA is clearly inapplicable. *See Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002) (holding that WPA "provides most federal agency employees with protection" for "whistleblowing activity"). Schultz has abandoned this application. New York state law prohibits any "retaliatory personnel action" against any employee that "discloses or threatens to disclose . . . an activity that is in violation of law." N.Y. Labor Law § 740(2)(a). Whether Schultz has such a claim is a question best left to the courts of New York State.

[2] Schultz also brought claims for intentional and negligent infliction of emotional distress; these were previously dismissed. *See* Mem. & Order, *Schultz v. Tribune Co., Inc.*, No. 06-CV-4800, Docket Entry No. 22 (E.D.N.Y. Sep. 4, 2007).

(ERISA). Therefore, and as more fully set forth below, Newsday's motion is granted in its entirety.[3]

## BACKGROUND

Unless otherwise noted, the following facts are undisputed, and are drawn chiefly from Schultz's deposition testimony. Schultz worked for Newsday from 1980-2004. Beginning in about 1999, he became aware (or at least suspected) that personnel at the newspaper were inflating circulation figures. In 2003, he became suspicious of one account in particular ("the Faella Account").[4] Schultz reported his concerns about the Faella Account (and other practices) to various superiors at the newspaper several times throughout the period 1999-2003. These concerns were either ignored or received coolly. At some point, two of Schultz's superiors, defendant Robert Brennan ("Brennan") and non-party Edward Smith, pressured Schultz to create a handwritten list related to the Faella Account ("the Handwritten List"). The Handwritten List was supposed to represent "where Faella was selling papers." Schultz Dep. Tr. at 91:13-16. Schultz made up dates

---

[3] Schultz admits that he has never served individual defendants Robert Brennan, Robert Garcia, Raymond Jansen, Louis Sito, nor any "John Does" or "Jane Does." The Court gave Schultz notice of his failure to effect service during oral argument on Newsday's motion; Schultz's counsel conceded that the claims were subject to dismissal. Accordingly, all of Schultz's claims against the individual defendants are dismissed pursuant to Rule 4. *See* Fed. R. Civ. P. 4(m) (permitting dismissal if plaintiff fails to effect service within 120 days of filing the complaint).

The Tribune Company ("Tribune") declared bankruptcy on December 8, 2008, and the case against it was automatically stayed. *See* 11 U.S.C. § 362(a)(1) (requiring automatic stay of judicial process against a debtor who has filed for bankruptcy); *see also* Order, Docket Entry No. 113 (Dec. 23, 2008) (entering stay). The bankruptcy law bars the Court from taking any action with respect to Tribune. *See Pope v. Manville Forest Prods. Corp.*, 778 F.2d 238, 239 (5th Cir. 1985) ("absent the bankruptcy court's lift of the stay . . . a case such as the one before us must, as a general rule, simply languish on the court's docket until final disposition of the bankruptcy proceeding."). Accordingly, the Clerk of the Court is ordered to administratively close the case against Tribune, subject to a letter request to reopen following the conclusion of Tribune's bankruptcy proceeding.

[4] "Faella" is spelled variously in Newsday's moving papers as both "Faiella" and "Faella." The Court takes both "Faella" and "Faiella" to refer to the same person, and adopts the spelling "Faella" herein.

3

of sales and the numbers of newspapers sold, and inserted these into the Handwritten List. *Id.* at 100:18-101:02. Schultz testified that he was afraid of creating the Handwritten List because he knew it was for a fraudulent purpose, namely, to present to Newsday's auditors as evidence of sales. *Id.* at 95:12-22, 97:02-20. Ultimately the Handwritten List was "never completed." *Id.* at 97:21-98:15. Schultz now refers to the Handwritten List as "thankfully aborted" and protests that it "was not [his] idea to cover-up the Faella overpayments." Schultz Aff. at ¶ 39.

In 2004, a civil complaint based on Newsday's circulation practices was filed against the newspaper on behalf of several advertisers. *See* Complaint, *Crabhouse of Douglaston, Inc. v. Tribune Co.*, No. 04-CV-558 (E.D.N.Y. Feb. 10, 2004). Around the same time, Newsday conducted an internal investigation into the circulation scandal, presumably in response to the complaint. In May 2004, in connection with that investigation, Schultz was asked to meet with Tribune's general counsel, Crane Kenney. Schultz spoke with Brennan prior to that meeting; Brennan told him: "[D]on't tell them anything, just tell them Richie Faella died . . ." Schultz Dep. Tr. at 58:17-23. Schultz construed the conversation as an instruction by Brennan not to tell Kenney anything. *Id.* at 62:12-17.

Schultz followed Brennan's instructions. He did tell Kenney that the Faella Account was "under investigation." *Id.* at 62:18-22. He did not, however, tell Kenney of his specific suspicions of fraud in the Faella Account, or of the brief existence of the Handwritten List. In June 2004, Schultz met with Tribune's in-house counsel Roger Goodspeed and outside counsel Thomas Souther. In this second interview, Schultz admitted that he knew that the "numbers being reported on the Faella [A]ccount were false." *Id.* at 74:13-20. Schultz had a third meeting in connection with Newsday's investigation later in June 2004, with Kenney, Souther, and possibly Thomas Caputo, a member of Tribune's internal audit group. Schultz admitted at this meeting that he had not been "honest" with Kenney during the May 2004 meeting. Schultz Dep. Tr. at 80:10-15.

4

Schultz was terminated on September 2, 2004. Katie Lawler, Vice President of Newsday's Human Resources and Labor Relations department, confirmed Schultz's termination in a letter the next day:

> I am writing to confirm the termination of your employment with Newsday effective September 2, 2004. As you were advised yesterday, the reasons for your termination are based on your participation in fraudulent circulation practices, your failure to be forthright with company attorneys during the investigation, and your violations of the company's Code of Conduct.

Letter from K. Lawler to G. Schultz (Sep. 3, 2004), Schultz Aff. Ex. C.

Schultz's termination occurred during a medical leave he took as of August 9, 2004. Significant back injuries caused him to miss work on numerous occasions; he is now disabled on account of his back condition. *See* Schultz Aff. at ¶ 19.

## DISCUSSION

### I. Standard of Review

Summary judgment should be granted "only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The movant must demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). Once that showing is made, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (quoting Fed. R. Civ. P. 56(e)) (other citations omitted).

A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 477 U.S. at 248, and the facts "must be viewed in the light most favorable to the nonmoving party . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citation omitted).

### II. Schultz's Claims

Under *McDonnell*, Schultz bears an initial burden of establishing a *prima facie* case of discrimination on each of his federal claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Critically, Schultz points to his activity as a "whistleblower," not to any right protected under the FMLA, the ERISA, or the ADA, as the basis for his termination. Therefore, Schultz cannot make out a *prima facie* case with respect to any of his federal claims; each of them consequently fails.

**III. The FMLA Claim**

To state a *prima facie* claim under the FMLA, Schultz must establish a causal connection between a right protected under the FMLA and his termination. *See Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000). Schultz claims that he was terminated "while on medical disability [] in retaliation for [his] opposition to Newsday's fraudulent conduct." Schultz Aff. at ¶ 5; *see also* Pl.'s Opp. Mem. of Law at 5 ("[D]efendants' termination of plaintiff while out of work during that time was retaliatory in nature *due to his threats to report the fraudulent activity*.") (emphasis added). Assuming that Schultz's medical leave that began on August 9, 2004, was protected by the FMLA, Schultz concedes that his termination was not related to his medical leave. To the contrary: he steadfastly asserts that he was terminated because he was going to expose the circulation scandal. The lack of a causal connection between his termination and any right protected under the FMLA is fatal to Schultz's FMLA claim.

**IV. The ERISA Claim**

Newsday contends that Schultz failed to exhaust administrative remedies with respect to any benefits protected by ERISA, and that his ERISA claim therefore fails. "A claimant's exhaustion of administrative remedies provided under a benefit plan is a prerequisite to filing an action which arises under ERISA." *Shamoun v. Bd. of Trustees*, 357 F.Supp.2d 598, 602 (E.D.N.Y. 2005). There is a "firmly established federal policy favoring exhaustion of administrative remedies

6

in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (internal citation omitted). "Exhaustion," in the ERISA context, "requires only those administrative appeals provided for in the relevant plan or policy." *Id.* Accordingly, the Court looks to the plan in which Schultz participated.

Shortly after his termination, Schultz wrote Tribune through counsel requesting clarification of his entitlement, if any, to short-term and long-term disability benefits. *See* Letter from T. Glynn to K. Lawler (Oct. 5, 2004), Osick Aff. Ex. B. Newsday rejected his claim to benefits: "Under the Company's disability policies, once an individual's employment is terminated, they are no longer eligible for either short term or long term disability benefits."[5] Letter from J. Osick to T. Glynn (Oct. 26, 2004), Osick Aff. Ex. C. The record contains no appeal of this determination. The plan documents state: "You will have 60 days after you receive notice of a denied claim to request in writing that the plan administrator review the decision denying the claim." Tribune Co. Disability Plans, "Summary Plan Description," at 12 (1992), Osick Aff. Ex. A; *see also* Tribune, Short-Term Disability Policy at 1 (Rev'd Jan. 1, 2002), Osick Aff. Ex. A (setting out requirements for filing short-term disability claims under plan; silent as to plan's appeals process, if any). Schultz makes no showing that he exhausted these, or any, administrative remedies. His complaint states that he "completed all forms and requirements to be entitled to his Short Term and Long Term Disability Insurance coverage," Am. Compl. at ¶ 179, but he submits no evidence to prove this allegation. A party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather [it must] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522,

---

[5] James Osick, Director/Senior Counsel of Labor and Employee Relations for Tribune, responded on behalf of Newsday; Osick states that Tribune managed Newsday's disability plans at all relevant times. Osick Aff. at ¶¶ 1-5.

532 (2d Cir. 1993) ("If the nonmoving party does not so respond, summary judgment will be entered against him."). Even if Schultz had exhausted his administrative remedies, his ERISA claim fails on the merits. His theory of liability is that he "was not fired because he participated in the fraud but *because he complained of it* to his superiors at Newsday and *threatened to report it.* In retaliation to plaintiff's threats, Newsday terminated him in an effort to deprive him of his ERISA benefits." Pl.'s Opp. Mem. of Law at 6 (emphasis added).

To state this theory of liability is to reject it. Schultz contends that he was terminated because of his threats to blow the whistle on the circulation scandal, not because of any reason related to his short or long-term disability benefits. Schultz does not offer any evidence that anyone at Newsday intended to deprive him of benefits protected by ERISA. Nor does Schultz point to any decision made by an administrator of Newsday's short or long-term disability benefits that was "arbitrary and capricious." *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 650 (2d Cir. 2002). Therefore, his ERISA claim fails on the merits.

## V. The ADA Claim

Schultz's ADA claim merits minimal analysis. He never requested a reasonable accommodation for any disability, nor can he establish that he could perform the essential functions of his job with or without such an accomodation. *See Ryan v. Grae & Rybicki*, 135 F.3d 867, 869-70 (2d Cir. 1998). Schultz has been found by the Social Security Administration to be disabled as of July 31, 2004. *See* Soc. Sec. Admin. Decision (July 26, 2006), Hoffman Aff. Ex. E. at 1, 3. To succeed on a claim under the ADA, Schultz would have to prove that he was capable of returning to his work at Newsday when he was fired. The Administration's factual determination that Schultz could not perform his former work, *see id.*, estops him from doing so.

Schultz's ADA claim also fails because he offers no evidence that he was terminated "because of" any disability. According to him, he was terminated because he threatened to expose

8

fraud at Newsday. *See* Schultz Dep. Tr. at 140:19-141:05 (Schultz's testimony on the reasons why he was terminated). That cause is totally unrelated to any disability.

## VI. The NYSHRL Claim

Schultz brought a claim under the NYSHRL for Newsday's "refus[al] to accommodate [his] disability, and [for] systematically terminating his employment because of such disability . . ." Am. Compl. at ¶ 188. In light of the disposition of Schultz's federal claims, the Court must determine whether it should retain supplemental jurisdiction over Schultz's state law claim. 28 U.S.C. § 1367 sets out this Court's authority to exercise supplemental jurisdiction over non-federal claims: "The district court may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1490 (2d Cir. 1993); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Schultz's NYSHRL claim does not present any factors that justify the exercise of supplemental jurisdiction in the absence of a viable federal claim. *See Drake v. Lab. Corp. of Am. Holdings*, 323 F.Supp.2d 449, 452-53 (E.D.N.Y. 2004) (discussing factors). Accordingly, the Court declines to exercise supplemental jurisdiction over Schultz's NYSHRL claim.

**CONCLUSION**

The motion for summary judgment by the Newsday defendants is granted as follows. All of Schultz's federal claims against Newsday and Timothy P. Knight are dismissed, with prejudice. His NYSHRL claim against Newsday and Knight is dismissed without prejudice to renewal in state court.

All of Schultz's claims against the individual defendants are dismissed pursuant to Rule 4. *See* n.3, *supra*. As to defendant Tribune, the Clerk of the Court is ordered to administratively close the case, subject to a letter request to re-open once Tribune exits bankruptcy. *See id*.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 7, 2009